UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                          Bankruptcy No. 10-30178
                                                                                                Chapter 7
Gary A. Hangsleben,

                Debtor.
_____/

Gary A. Hangsleben,

                Plaintiff,

         vs.                                                                            Adversary No. 10-7018

United States Department of Education,
United States of America acting by and
through Department of Education,

                Defendants.
_____/

**MEMORANDUM AND ORDER**

      This adversary proceeding was commenced by Plaintiff/Debtor Gary A. Hangsleben by Complaint filed July 26, 2010.  Debtor seeks a determination that the loans underlying his debt to Defendants United States Department of Education and United States of America acting by and through Department of Education are subject to discharge in this Chapter 7 case.  Specifically, Debtor argues the loans are dischargeable because requiring repayment of them would constitute an undue hardship on him under 11 U.S.C. § 523(a)(8).  By Answer filed August 25, 2010, the United States denies Debtor is entitled to the relief he requests. The parties filed a Joint Stipulation of Uncontested Facts on November 23, 2010.

      The matter was tried on January 19, 2011.  From the stipulated facts and evidence presented at trial, the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

Debtor is 65 years old and has no dependants. He attended the University of North Dakota (UND) from 1985 to 1988 and earned a bachelor's degree in social work. He applied for and received student loans to fund his education. He executed promissory notes as follows:

| Date | Amount |
| --- | --- |
| 7/15/85 | $2,500.00 |
| 8/6/87 | 2,650.00 |
| 1/9/88 | 1,350.00 |
| 4/22/88 | 4,000.00 |
| 10/8/88 | 2,200.00 |

Debtor's loan obligations were guaranteed by Minnesota Higher Education Assistance Foundation ("the guarantor") and reinsured by the United States Department of Education (DOE). The lender who held the promissory notes ("the holder") demanded payment according to the terms of the notes, and Debtor defaulted. The holder filed a claim on the loan guarantee, and the guarantor paid the holder $15,111.10 on its claim. The guarantor attempted, without success, to collect from Debtor, and the guarantor assigned its right to the loan to DOE on July 15, 1993. DOE reimbursed the guarantor under its reinsurance program, and DOE now holds the claim against Debtor.

After graduation, Debtor worked for short periods of time as a social worker for Walsh County Social Services, Red Lake County Social Services, and Honolulu Social Services. According to an adverse action report prepared by the Healthcare Integrity and Protection Data Bank, Debtor's social work license was permanently revoked because of a felony conviction on January 24, 1997. The report does not specify the felony underlying the action, but at trial, Debtor testified that his convictions include assault (1979), parental kidnapping (1983), and theft (1996).

Debtor has held a commercial driver's license issued by the state of Minnesota continuously since approximately the time of his social work license revocation. He began working as a truck driver for Transystems in 1998.

DOE sent a notice of a proposed wage garnishment to Debtor on December 7, 2006, informing him of its intention to order his employer to garnish his wages for the student loan debt unless Debtor responded within 30 days.

The evidence in this case includes a written request by Debtor for a hearing on his objections to the wage garnishment, dated December 10, 2006. Among his objections, Debtor claimed he had filed for bankruptcy and his case was still open. When asked about this at trial, Debtor testified that he had hired an attorney to file bankruptcy for him a few months earlier, but that he did not think the attorney ever filed it despite keeping his retainer. Debtor also objected to his wage garnishment on the basis that the student loan debt was discharged in a prior bankruptcy. He explained this by testifying that he thought the loans had been discharged in a prior bankruptcy. He also objected on the basis that the borrower had died, although he was unable to explain why he might have made this assertion. He objected on the basis that he is totally and permanently disabled. He explained this at trial by stating that he applied for disability benefits in 2006. He claimed that he was unable to complete his education because the school he attended, UND, closed. Debtor conceded at trial that this was incorrect. He also checked several other objections to his garnishment that were not discussed at trial. One of them includes the assertion that he had a condition that prevented him from meeting state requirements for performing the occupation for which he was trained. The request for hearing form includes the following provision: "I state under penalty of law that the statements made

3

on this request are true and accurate to the best of my knowledge." Debtor signed and dated the form.

For some reason not in evidence, DOE did not receive Debtor's request for a hearing on the wage garnishment until February 2007. Because this was after the 30-day response time, DOE sent a withholding order to Debtor's employer on January 16, 2007, and the garnishment commenced. Debtor was granted a hearing on his objections to the wage garnishment on February 27, 2007. DOE determined that Debtor did not provide sufficient documentation to show that the garnishment of his wages caused him financial hardship.

On May 14, 2007, Debtor submitted a loan discharge application to DOE. In the application, Debtor asserted that he qualified for a loan discharge based on false certification due to a disqualifying status that rendered him unable, at the time the school originated the loan, to meet the legal requirements for employment in North Dakota in the occupation for which the program of study was intended. The disqualifying status Debtor claimed was a criminal record, specifically, simple assault and felony parental kidnapping. Debtor claimed that UND did not determine his ability to benefit from his education because he was admitted into the social work program despite his prior felony conviction, and the felony conviction prohibited him from employment as a social worker.

On June 16, 2007, DOE determined that the garnishment of his wages created a financial hardship and suspended garnishment for six months. In making this determination, DOE considered its own records, Debtor's request for a hearing, and a financial disclosure form.[1]

---

[1] Although three subsequent financial disclosure forms were admitted into evidence, the financial disclosure form referenced here is not in evidence.

4

Debtor completed three additional financial disclosure statements to support his hardship claim, dated June 20, 2008, August 12, 2008, and September 2, 2009. On each of the disclosure statements, Debtor indicated he had six dependants including himself. He testified that the six dependants were his adult children and his grandchildren. Debtor has a son and a daughter living in North Dakota and a son with four children living in Minneapolis/St. Paul. None of Debtor's children or grandchildren lived with Debtor. He testified that he provided money to the grandchildren in 2008, but he could not recall how much. On each disclosure statement, Debtor declared under penalty of perjury that his answers and statements were true and correct. Debtor stipulated in this case that he does not have any dependants.

Also dated August 12, 2008, is a request for a hearing on his objection to offset against his federal and/or state tax refunds and other payments for the student loan debt. Attached to this request is a handwritten objection signed by Debtor. Among the bases for his objection, Debtor claimed, "[M]y debt is <u>canceled</u> because of <u>military</u>, <u>teaching</u>, <u>volunteer</u> [and] <u>public service</u> over the <u>past 25 years</u>!" When asked about this at trial, Debtor testified that he was in the National Guard and the ROTC. As for teaching, Debtor testified that he belonged to two organizations that held workshops and he taught classes on divorce and child support. He conceded, however, that he had never been a licensed teacher.

According to a certificate of indebtedness signed by Lola Hom, a DOE senior loan analyst, DOE credited a total of $5,072.45 from all sources to the balance of Debtor's outstanding student loan obligation. Debtor has not made any voluntary payments toward the repayment of his student loans. Also, Hom's research found no evidence of Debtor ever applying for or requesting a repayment plan under any of the income-contingent repayment programs offered by DOE. As of

5

November 30, 2010, the total outstanding balance was $34,003.22, including principal and interest, with additional interest accruing on the principal at the rate of $3.31 per day.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 26, 2010. Schedule I lists Debtor's average monthly income as $2,157.00. This includes unemployment compensation but does not include social security benefits. It also includes a $269 monthly deduction for the garnishment. Debtor states on Schedule I that he expects to retire in 2011. Schedule J lists Debtor's average monthly expenses as $3,255.50 excluding any student loan payment.

As mentioned, Debtor currently holds an active commercial driver's license issued by the state of Minnesota. He has held this license continuously for approximately 14 years and has been employed fulltime as a truck driver for Transystems for the last 13 years. Debtor hauls sugar beets, working four 12-hour days each week. He works for Transystems for seven to eight consecutive months and is then unemployed for four to five months and draws unemployment benefits. Debtor's 2009 tax return, the most recent return in evidence, indicates Debtor's 2009 total gross income was $40,120, including wages ($29,877), unemployment compensation ($4,368), and social security benefits ($5,875). Debtor's adjusted gross income was $37,620.00.

Debtor testified that his commercial driver's license is restricted insofar as he cannot enter Canada, have passengers, drive a school bus, or handle hazardous materials. He does, however, have a good driving record.

In addition to driving truck, Debtor also currently serves as director of the Children's Center. He has held this unpaid position for 13 years, volunteering between 25 and 50 hours each week at

the center. Debtor testified that he had fewer than 10 clients in the last year and that he presently has no clients.

Debtor testified that he has been in three accidents that left him with physical problems. He claims to have short-term memory loss, numbness in his hands and feet, and dizziness.

A letter to Debtor from the North Dakota Board of Social Work Examiners, dated December 14, 2010, states that Debtor may apply for a social work license. It states, " If you meet all of the requirements for a license, the Board may grant your application. The Board may deny an application of the applicant '[h]as been convicted of an offense determined by the board to have a direct bearing upon that individual's ability to practice social work or is not sufficiently rehabilitated as determined by the board in accordance with section 12.1-33-02.1' NDCC 43-41-10(1)."

## II.  CONCLUSIONS OF LAW

Dischargeability of student loans is governed by section 523(a)(8) of the Bankruptcy Code, which provides, in relevant part, that debts for student loans may not be discharged unless "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C § 523(a)(8).  Unlike many other types of debts, section 523(a)(8)'s exclusion of student loans from discharge is self-executing in that unless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt.  Walker v. Sallie Mae Servicing Corp. (In re Walker), 427 B.R. 471, 476 (B.A.P. 8th Cir. 2010).  In other words, a debtor's obligation on a student loan remains until there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.  Id.

The Eighth Circuit has adopted a totality-of-the-circumstances test in determining undue hardship under section 523(a)(8). Educational Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 779 (8th Cir. 2009). Courts must consider the debtor's past, present, and reasonably reliable future financial resources, the debtor's reasonable and necessary living expenses, and any other relevant facts and circumstances. Id. (quotation omitted). The debtor has the burden of proving undue hardship by a preponderance of the evidence, and the burden is rigorous. Id. "'Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged.'" Id. (quoting In re Long, 322 F.3d 549, 554–55 (8th Cir. 2003)).

The Court begins with Debtor's financial resources. Debtor argues he has maximized his income by working 12-hour days for the past 13 years. Moreover, he asserts that hauling beets often requires driving in storm and blizzard conditions which is very stressful. He also asserts that he intends to retire soon.

Schedule I lists Debtor's average monthly net income as $2,157.00, including unemployment compensation but not social security benefits. It also includes a $269 monthly deduction for the garnishment. Debtor's 2009 tax return, the most recent return in evidence, indicates Debtor's 2009 adjusted gross income was $37,620.00, including both unemployment and social security. His total annual tax obligation was $3,824.00, resulting in an annual net income of $33,796. This equates to a monthly average of $2,816.33. Absent an explanation from Debtor as to any changed circumstances since the 2009 tax year that negatively impacted his income, the Court concludes that the best evidence of Debtor's monthly net income is his most recent income tax return, and concludes that his average net monthly income, inclusive of all sources, is $2,816.33.

Next, the Court is not convinced that Debtor has maximized his income. Although Debtor testified that his social work career is over because of his criminal record, a letter to Debtor from the North Dakota Board of Social Work Examiners, dated December 14, 2010, states that Debtor may apply for a social work license. The Court's cannot speculate as to the likelihood of Debtor's application resulting in Debtor's licensure, but the evidence supports the possibility that licensure, and employment as a social worker, remains a possibility.

Even if Debtor is unable to regain his license to practice social work, Debtor holds an active commercial driver's license, albeit with some restrictions, and has held consistent employment as a truck driver for 13 years. He drives truck for seven to eight consecutive months and is unemployed for four to five months. While driving truck, his workweek is four 12-hour days. In addition, Debtor is also the director of the Children's Center, volunteering between 25 and 50 hours each week at the center.

Despite his asserted physical problems, including short-term memory loss, numbness in his hands and feet, and dizziness, Debtor offered no evidence, aside from patient information leaflets on various prescriptions, to substantiate his claims. Next, his health is good enough for him to work fulltime and to devote 25-50 hours per week to volunteer work. Moreover, he has consistently been able to pass a medical examination for a commercial driver's license.

Debtor could increase his income by finding employment during the four to five months he is not working as a truck driver. Although his commercial driver's license has restrictions, he has a good driving record and many years of experience to help him secure a off-season driving job. Moreover, if Debtor is able to volunteer 25-50 hours per week at the Children's Center, he has the

9

ability to work at gainful employment. Volunteerism is laudable, but not at the expense of one's creditors. In short, Debtor has not maximized his income.

Debtor's age is relevant to the issue of his reasonably reliable future financial resources. Debtor is 65 years old and expressed his intention to retire soon. Debtor's intention aside, there is no evidence that he cannot continue to work for many additional years, and the mere fact that Debtor has reached normal retirement age does not mean that the debt should be discharged. See Houshmand v. Missouri Student Loan Program (In re Houshmand), 320 B.R. 917, 921 (Bankr. W.D. Mo. 2004). Also mitigating Debtor's age as an indicator of undue hardship is the fact that Debtor took out his first loan in 1985 at age 39. See Mandala v. Educational Credit Mgmt. Corp. (In re Mandala), 310 B.R. 213, 222 (Bankr. D. Kan. 2004) (finding fact that obligations will persist past debtor's retirement age is the result of her choosing to return to school on borrowed money at age of 36). Debtor should have been aware that the effect of failing to make any payments on this obligation would extend the years required for him to work to satisfy the debt. Under the circumstances of this case, it is not unreasonable to expect Debtor to continue working well beyond age 65.

With regard to Debtor's expenses, the United States questioned Debtor about his expenses, but did not take exception to any of Debtor's listed expenses as unreasonable. Upon review of Debtor's expenses, the Court finds Debtor's monthly expenses are indeed reasonable and total $3,255.50.

In consideration of the other circumstances in this case, bankruptcy courts in the Eighth Circuit have looked to a number of factors to assist them in making the "totality of circumstances" determination . Marie v. Citibank NA (In re Groves), 398 B.R. 673 (Bankr. W.D. Mo. 2008). These

factors include: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loans; and (9) the ratio of student loan debt to total indebtedness.  Id. at 683 n.31; Randall v. Norwest Student Loan Services (In re Randall), 255 B.R. 570, 577 (Bankr. D.N.D. 2000).  While these factors are helpful in some cases, they have not been expressly adopted by the Eighth Circuit as part of the totality-of-the-circumstances test, and many of the factors are often irrelevant when applied in a particular case. In re Groves, 398 B.R. at 683.  Moreover, several of these factors overlap with the first two factors of the undue hardship test and, thus, do not warrant further discussion.  Id.

Several of these factors are at work in this case.  First, it is significant that Debtor has not made any voluntary payments on the student loan obligations. The only debt reduction in the overall debt has been by way of collections through wage garnishment and offset of tax returns.

Next, Debtor has not sought participation in a repayment plan under any of the income-contingent repayment programs offered by DOE.  The most generous plan is the Income Contingent Repayment Plan (ICRP), which permits an eligible borrower to make "varying annual repayment amounts based on the income of the borrower, paid over an extended period of time prescribed by the Secretary, not to exceed 25 years." 20 U.S.C. § 1087e(d)(1)(D); see 34 C.F.R. § 685.209.  Undue hardship under section 523(a)(8) requires a separate analysis under which the ICRP is a factor to

11

consider in evaluating the totality of the debtor's circumstances. Id. (citing Lee v. Regions Bank Student Loans (In re Lee), 352 B.R. 91, 95 (B.A.P. 8th Cir. 2006)). However, a student loan should not be discharged when the debtor has "the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program." Id. (citing VerMass v. Student Loans of North Dakota (In re VerMaas), 302 B.R. 650, 660 (Bankr. D. Neb. 2003)).

Under the ICRP, an eligible debtor's annual loan payment is equal to twenty percent of the difference between his adjusted gross income and the poverty level for his family size, regardless of the amount of unpaid student loan debt. 34 C.F.R. § 685.209(a)(2)-(3). Repayments are made monthly. § 685.208(k). The Secretary recalculates the annual payment amount each year based on changes in the borrower's adjusted gross income and the HHS Poverty Guidelines and may adjust the obligation based upon special circumstances such as a loss of employment. §§ 685.209(a)(5), (c)(3). If the borrower has not repaid the loan at the end of twenty five years, "the Secretary cancels the unpaid portion of the loan." § 685.209(c)(4)(iv). The Secretary may require a borrower who has defaulted to repay the student loan pursuant to an ICRP, 20 U.S.C. § 1087e(d)(5)(B), confirming that the ICRP is an appropriate way for borrowers to avoid undue hardship while repaying their loans.

The Eighth Circuit Court of Appeals confirmed in Jesperson that the ICRP is a factor to be considered in evaluating the totality of the debtor's circumstances:

> [U]ndue hardship under § 523(a)(8) continues to require separate analysis under which, in this circuit, the ICRP is "a factor" to consider in evaluating the totality of the debtor's circumstances. However, a student loan should not be discharged when the debtor has "the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program."

12

Id. at 781 (citations omitted). Although some question remains as to the weight to be given to the ability to make an ICRP payment following Jesperson, the Eighth Circuit made clear that the ability to do so is, at a minimum, an important factor in the analysis. Debtor has not sought participation in ICRP or any other repayment program.

On this record, the Court concludes that Debtor can presently make student loan payments without compromising a minimal standard of living, and Debtor has not proven an undue hardship under 11 U.S.C. § 523(a)(8). Accordingly, Debtor Gary A. Hangsleben's outstanding obligation to United States Department of Education in the total amount of $34,003.22, plus accrued interest at the rate of $3.31 per day since November 30, 2010, is nondischargeable under 11 U.S.C. § 523(a)(8).

The Court has considered all other arguments and deems them to be without merit.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this June 10, 2011.

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**